UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ANTONINA MATTIOLI,

    Plaintiff,

        v.                                      No. 3:17-cv-1409(WIG)

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

    Defendant.
_____X

**RULING ON PENDING MOTIONS**

This is an administrative appeal following the denial of the plaintiff, Antonina Mattioli's, application for Title II disability insurance benefits ("DIB") and Title XVI supplemental security income benefits ("SSI"). It is brought pursuant to 42 U.S.C. § 405(g).[1] Plaintiff now moves for an order reversing the decision of the Commissioner of the Social Security Administration ("the Commissioner"), or in the alternative, an order remanding her case for a rehearing. [Doc. # 17]. The Commissioner, in turn, has moved for an order affirming her decision. [Doc. # 23]. After

---

[1] Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. §§ 405(b)(1) and 1383(c)(1)(A). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). *See* 20 C.F.R. § 404.929. Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council. *See* 20 C.F.R. § 404.967. If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States district court. Section 205(g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C § 405(g).

1

careful consideration of the arguments both parties presented, the matter is remanded for additional proceedings.

## LEGAL STANDARD

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the district court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Id.*; *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to first ascertain whether the Commissioner applied the correct legal principles in reaching her conclusion, and then whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). Therefore, absent legal error, a decision of the Commissioner cannot be set aside if it is supported by substantial evidence. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla or touch of proof here and there in the record." *Williams*, 859 F.2d at 258. If the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

**BACKGROUND**

Plaintiff filed her DIB and SSI applications on June 20, 2011, alleging a disability onset date of January 1, 2011. With respect to the DIB claim, she last met the insured status requirements of the Social Security Act on December 31, 2011.[2] Plaintiff's claim was denied at both the initial and reconsideration levels. Thereafter, Plaintiff requested a hearing. On September 4, 2012, a hearing was held before administrative law judge Ronald J. Thomas ("the ALJ"). On September 21, 2012, the ALJ issued a decision denying Plaintiff's claim. Plaintiff then sought review with the Appeals Council. After the Appeals Council denied review, Plaintiff appealed to the District of Connecticut. On September 16, 2015, the district court remanded the matter to the ALJ to evaluate the significance of Plaintiff's non-exertional limitations, and, if necessary, to obtain vocational testimony as to Plaintiff's ability to find work that exists in the national economy. *See Mattioli v. Comm'r of Soc. Sec.*, No. 14-cv-182(JAM) (Doc. # 25), (D. Conn. Aug. 11, 2015).

The ALJ held a subsequent hearing on March 27, 2017. On June 19, 2017, the ALJ issued a decision denying Plaintiff's claim. Plaintiff again sought review with the Appeals Council. The Appeals Council denied review, making the ALJ's 2017 decision the final decision of the Commissioner. This action followed.

The ALJ's 2017 decision follows the sequential evaluation process for assessing disability claims.[3] At Step One, the ALJ found that Plaintiff had not engaged in substantial

---

[2] This means that Plaintiff must demonstrate that her disability existed on or before this date in order to prevail on her DIB claim. Plaintiff concedes that the ALJ's decision with respect to the DIB claim is supported by substantial evidence, given the remoteness of the date last insured. Thus, Plaintiff challenges only the ALJ's decision pertaining to her SSI claim.

[3] The five steps of this process are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or

gainful activity since the alleged onset date. (R. 576). At Step Two, the ALJ found Plaintiff had the following severe impairments: major depressive disorder; generalized anxiety disorder; diabetes; hypothyroidism; bilateral shoulder tears, status post surgery; arthralgia; and sleep apnea. (R. 576). At Step Three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (R. 576-78). Next, the ALJ determined Plaintiff retained the following residual functional capacity[4] during the relevant period:

> Plaintiff could perform medium work[5] except she can occasionally interact with the public, supervisors, and coworkers; she cannot climb ladders, ropes, or scaffolds; and she can occasionally reach overhead with the right dominant master arm.

(R. 597-82). At Step Four, the ALJ found Plaintiff was able to perform her past work as a housekeeper. (R. 582). Finally, the ALJ made an alternative determination that, at Step Five, there are jobs existing in significant numbers in the national economy Plaintiff could perform. (R. 583). Accordingly, the ALJ found Plaintiff not to be disabled.

---

physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment which "meets or equals" an impairment listed in Appendix 1 of the regulations (the Listings). If so, and it meets the durational requirements, the Commissioner will consider the claimant disabled, without considering vocational factors such as age, education, and work experience; (4) if not, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work in the national economy which the claimant can perform. 20 C.F.R. § 416.920(a)(4)(i)-(v). The claimant bears the burden of proof on the first four steps, while the Commissioner bears the burden of proof on the final step. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

[4] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite his or her limitations. 20 C.F.R. § 416.945(a)(1).

[5] Medium work involves lifting no more than 50 pounds at a time, with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 416.967(c).

Plaintiff's complete medical history is set forth in the Joint Stipulation of Facts filed by the parties. [Doc. # 17-3]. The Court adopts the stipulation and incorporates it by reference herein.

## DISCUSSION

Several regulations and governing Social Security Rulings were amended during the pendency of the case. "These new rules generally apply to claims filed either on or after January 17, 2017 or March 27, 2017, depending on the regulation." *Cobb v. Berryhill*, No. 4:17-CV-00106-A, 2017 WL 6492078, at *4 n. 2 (N.D. Tex. Nov. 29, 2017), *report and recommendation adopted,* No. 4:17-CV-106-A, 2017 WL 6493237 (N.D. Tex. Dec. 15, 2017) (citing 81 Fed. Reg. 66138-01, 2016 WL 5341732 (F.R. Sept. 26, 2016)). District courts are "generally to apply those rules that were in effect at the time the ALJ issued [the] decision." *Id.* (citing 81 Fed. Reg. 66138-01, fn.1 ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.")).

Among the amended regulations and Rulings are those applicable to evaluation of the severity of mental impairments. *See* 20 C.F.R. § 416.920a. This evaluation requires "application of a 'special technique' at the second and third steps of the five-step framework, and at each level of administrative review." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citation omitted). The special technique obliges the reviewer to first determine whether the claimant has a medically determinable impairment. 20 C.F.R. § 416.920a(b)(1). If the claimant is found to have such an impairment, the reviewer must then "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)." 20 C.F.R. § 416.920a(b)(2). Paragraph (c) specifies four broad functional areas. Prior to January 17, 2017,

these four areas consisted of the following: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.

As of January 17, 2017, the four functional areas are as follows: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. § 416.920a(c)(3).

The reviewer will rate the claimant's degree of limitations in these four areas using a five-point scale: "none, mild, moderate, marked, and extreme." 20 C.F.R. § 416.920a(c)(4). If the reviewer rates the limitation as "none" or "mild," the impairment will be considered non-severe. 20 C.F.R. § 416.920a(d)(1). If the claimant's mental impairment is severe, the reviewer will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder. 20 C.F.R. § 416.920a(d)(2). If so, the claimant will be found to be disabled. If not, the reviewer will then assess the claimant's RFC. 20 C.F.R. § 416.920a(d)(3).

The application of the special technique must be documented in the record. At the initial and reconsideration levels, a state agency medical or psychological consultant will complete a standard document to record how the technique was applied. 20 C.F.R. § 416.920a(e)(1). At the ALJ hearing and Appeals Council levels, the application of the special technique must be documented in the Commissioner's decision. 20 C.F.R. § 416.920a(e). Specifically, "the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." 20 C.F.R. § 416.920a(e)(4). In addition, "[t]he decision must include a

specific finding as to the degree of limitation in each of the functional areas." 20 C.F.R. § 416.920a(e)(4). The ALJ's decision as to whether an impairment meets or medically equals a listing must be based on "the preponderance of the evidence in the record." *See Soc. Sec. Ruling 17-2p: Titles II & XVI: Evidence Needed by Adjudicators at the Hearings & Appeals Council Levels of the Admin. Review Process to Make Findings About Med. Equivalence*, SSR 17-2P, 2017 WL 3928306, at * 3 (S.S.A. Mar. 27, 2017).

When the ALJ held the March 27, 2017 hearing, and issued the June 19, 2017 decision, the new criteria were in effect. It is undisputed that the ALJ completed the special technique under the new criteria. The ALJ evaluated the severity of Plaintiff's mental impairments and concluded they did not meet or medically equal the criteria of Listing 12.04 (depressive or bipolar disorders) or 12.06 (anxiety disorders). (R. 577). In reaching this conclusion, the ALJ determined that Plaintiff had mild limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; mild limitations in concentrating, persisting, or maintaining pace; and mild limitations in adapting or managing oneself. (R. 577-78). The ALJ cited to the 2011 opinions of Plaintiff's treating psychiatrist, Dr. Naungayan, and treatment notes from Dr. Naungayan and Robert Pernice, LCSW, to support his findings.

In this case, no medical professional, either a treating source *or* a state agency medical or psychological consultant, reviewed the medical evidence and gave an opinion as to how it corresponded to the *new criteria*. In addition, no state agency medical or psychological consultant reviewed the *entire record* and offered an opinion with respect to Plaintiff's mental limitations under *either set* of functional areas. While Dr. Naungayan's opinions evaluated Plaintiff's limitations under two of the four new functional areas, they do not evaluate Plaintiff's restrictions under all of the new criteria. The mental impairment questionnaires Dr. Naungayan

7

completed required her to rate Plaintiff's functional abilities in the areas of activities of daily living, social interaction, and task performance (on one form, R. 340-41), and social interaction and task performance (on a second form, R. 352). Neither form observably addresses understanding, remembering, or applying information or adapting or managing oneself.

So, no medical professional viewed the evidence as a whole and evaluated Plaintiff's performance in the four functional areas set forth in the revised regulation. Thus, in order for the ALJ to make findings in at least the areas of understanding, remembering, or applying information or adapting and managing oneself, the ALJ had to engage in interpreting the underlying medical evidence based on lay opinion. This is something the ALJ cannot do. *See Pagan v. Comm'r*, No. 16CIV3774(ER)(HBP), 2017 WL 9565536, at *15 (S.D.N.Y. July 13, 2017), *report and recommendation adopted sub nom. Pagan v. Berryhill*, No. 16CIV3774 (ER), 2017 WL 4174815 (S.D.N.Y. Sept. 20, 2017) (finding ALJ erred in application of the special technique when he failed to "cite to any medical opinions to support his conclusions" and instead "improperly substituted his own lay assessment of plaintiff's mental abilities" for that of a medical source); *Coyle v. Comm'r*, No. 5:17-CV-0924 (WBC), 2018 WL 3559073, at *5 (N.D.N.Y. July 24, 2018) (remanding for proper application of the special technique when the ALJ's determination did not correspond to any medical opinion in the record, and was not supported by sufficient rationale and analysis for the court to perform meaningful review); *Rousey v. Comm'r*, 285 F. Supp. 3d 723, 739 (S.D.N.Y. 2018) (explaining that an ALJ did not "improperly substitute his opinion for that of a medical professional in finding that plaintiff's psychiatric impairments were not severe" when the ALJ gave controlling weight to the opinion of a consulting source and great weight to the opinion a medical consultant).

The Court appreciates the Commissioner's argument that the ALJ was not required to call a psychiatrist or psychologist to perform the special technique. In support of this position, the Commissioner points to 42 U.S.C. § 421 and SSR 17-2p. The statutory provisions relating to disability determinations dictate that an "initial determination under subsection (a), (c), (g), or (i) shall not be made until the Commissioner of Social Security has made every reasonable effort to ensure … in any case where there is evidence which indicates the existence of a mental impairment, that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment." 42 U.S.C.A. § 421(h). Subsections (a), (c), (g), and (i), respectively, deal with initial state agency disability determinations, the Commissioner's review of a state agency determination, when an applicable state agency cannot make the determination, and reviews for continuing eligibility. Subsection (d), which is not mentioned in subsection (h), deals with a claimant's entitlement to an administrative hearing and judicial review. Thus, the Commissioner argues, a plain reading of the statute indicates that a psychiatrist or psychologist is not required to review the evidence and offer a medical opinion at the ALJ hearing level.

What troubles the Court with adopting this argument in its entirety is that the statute appears to contemplate that, although technically a qualified psychiatrist or psychologist is not required to review the evidence and offer an opinion at the ALJ hearing level, the ALJ is undertaking that determination with the benefit of a record containing an opinion from such a professional applying the same criteria the ALJ will be applying. Because of the particular timing of this case – that the regulations changed during the pendency of the matter – that did not happen here.

9

SSR 17-2p states that at the ALJ hearing level, the ALJ will determine whether a claimant's impairment meets or medically equals a listing at Step Three, and that "[t]o assist in evaluating this issue, adjudicators at the hearings level may ask for and consider evidence from medical experts (ME) about the individual's impairment(s), such as the nature and severity of the impairment(s)." SSR 17-2P, at * 3. The ruling goes on to state that, at the ALJ hearing level, to support a finding that a claimant is *disabled* based on medical equivalence, the record must contain an opinion from a medical or psychological consultant. *Id.* (emphasis added). If, however, the ALJ "believes that the evidence does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment," the ALJ is not required to "obtain ME evidence or medical support staff input prior to making a step 3 finding that the individual's impairment(s) does not medically equal a listed impairment." *Id.* at *4. The Commissioner argues that this guidance supports her position that a medical or psychological consultant was not required to apply the special technique in this case.

Again, though, the Court hesitates to read the Ruling removed from its context in the regulations as a whole. Significantly, the Ruling also states that "[a]lthough adjudicators at the hearings and [Appeals Council] levels are not required to adopt prior administrative medical findings when issuing decisions, adjudicators must consider them and articulate how they considered them in the decision." *Id.* at *3. Thus, the framework which the SSA appears to envision is, again, one in which the ALJ is applying the special technique with the benefit of having had a medical professional apply the same criteria to the evidence once before. In that framework, while the ALJ is not necessarily wed to a prior determination, the record does contain an opinion from a mental health professional which the ALJ can review as part of the overall medical evidence. Since the regulations changed during the pendency of this case, and

10

no medical professional applied the new criteria to the medical evidence here, the ALJ had nothing to consider.

In light of the foregoing, the Court cannot say that the ALJ's review of the new criteria is supported by a preponderance of the evidence in the record. While an ALJ's failure to follow the special technique can result in harmless error, *see Fait v. Astrue*, No. 10-CV-5407 NGG, 2012 WL 2449939, at *6 (E.D.N.Y. June 27, 2012), here, the Court cannot determine whether the ALJ's application of the special technique is adequately supported without itself substituting its opinion for that of a qualified medical professional. Since the Court cannot meaningfully review the ALJ's decision in this regard, the matter is remanded so that the ALJ can properly assess the severity of Plaintiff's mental impairments under the new criteria. In so doing, the ALJ may need to further develop the record to account for the particular circumstances of this case: that certain pertinent regulations were significantly revised during the pendency of the matter.

## **Conclusion**

For the reasons explained above, the Plaintiff's motion is granted and the Commissioner's motion is denied. This matter is remanded for additional proceedings consistent with this opinion. This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. *See* 28 U.S.C. § 636(c)(3); Fed.R.Civ.P. 73(c). The Clerk's Office is instructed that, if any party appeals to this court the decision made after this remand, any subsequent social security appeal is to be assigned to the District Judge or Magistrate Judge who issued the Ruling that remanded the case. The Clerk is directed to enter judgment in favor of the plaintiff and close this case.

SO ORDERED, this  1st  day of November, 2018, at Bridgeport, Connecticut.

                                    */s/ William I. Garfinkel*
                                    WILLIAM I. GARFINKEL
                                    United States Magistrate Judge